UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-60112-WPD/Snow

18 U.S.C. § 1343
31 U.S.C. § 5324

UNITED STATES OF AMERICA

vs.

JOSEPH A. SANFILIPPO,

    Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times material to this Information:

1. M.S. was a widow who lived in South Florida.

2. M.S. had two bank accounts. One account (ending in 1217) was with Wells Fargo Bank, N.A. The other account (ending in 1069) was with Charles Schwab Bank.

3. Defendant JOSEPH A. SANFILIPPO ("SANFILIPPO") had two bank accounts. One account (ending in 3807) was with JPMorgan Chase Bank, N.A. The other account (ending in 7787) was with Wells Fargo Bank, N.A.

## COUNTS 1-4
(Wire Fraud - 18 U.S.C. § 1343)

4. Paragraphs 1 through 3 of the General Allegations section of this Information, are incorporated by reference as though re-alleged in their entirety herein.

5. From in or about May 2015, through in or about December 2017, in Broward and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, the defendant,

**JOSEPH A. SANFILIPPO,**

did knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communications, certain writings, signs, signals, pictures and sounds.

## PURPOSE OF THE SCHEME AND ARTIFICE

6. It was the purpose of the scheme and artifice for defendant SANFILIPPO to unjustly enrich himself by making false and fraudulent representations to M.S. about an investment opportunity, getting her to invest in that investment opportunity based on these misrepresentations, and keeping the money that M.S. had given him for the purported investment.

## THE SCHEME AND ARTIFICE

7. Defendant SANFILIPPO met victim M.S. in or about 2008 and developed a relationship of trust with her.

8. Sometime in or around 2015, defendant SANFILIPPO told M.S. that he could help her invest some of her money. Specifically, defendant SANFILIPPO falsely and fraudulently told M.S. that she could earn a high rate of return by investing in a purported company named "Cayman Shipping and Distributions, LLC," ("Cayman Shipping"). Defendant SANFILIPPO falsely and fraudulently claimed that Cayman Shipping existed and was located in the Cayman Islands. Defendant SANFILIPPO falsely and fraudulently told M.S. that because the investment offered a high rate of return, Cayman Shipping limited the number of its investors

2

and that the investments were made through a private offering.

9. Defendant SANFILIPPO told M.S. that an individual who he identified as "Jacob Rosenthal" ("Rosenthal") was the President of Cayman Shipping.

10. Defendant SANFILIPPO advised M.S. that because "Rosenthal" trusted only him, "Rosenthal" would only accept Cayman Shipping investment money directly from defendant SANFILIPPO.

11. Believing defendant SANFILIPPO's false and fraudulent representations, M.S. agreed to invest in Cayman Shipping. Defendant SANFILIPPO told M.S. to make the investment checks payable to defendant SANFILIPPO, and that defendant SANFILIPPO, in turn, would give Cayman Shipping the investment money in a manner that was purportedly acceptable to "Jacob Rosenthal." Defendant SANFILIPPO further instructed M.S. to write multiple checks, in smaller amounts, payable to defendant SANFILIPPO instead of writing one large check payable to defendant SANFILIPPO.

12. Defendant SANFILIPPO told M.S. that her investments would be repaid in one year, with interest on the principal.

13. From approximately August 6, 2015, until approximately August 13, 2015, in accordance with what defendant SANFILIPPO had instructed her to do, M.S. invested $200,000 with Cayman Shipping by writing eight (8) checks, all made payable to "Joseph A. Sanfilippo." M.S. wrote "loan" on the memo line of each of these checks.

14. From approximately October 28, 2015, until approximately November 2, 2015, in accordance with what defendant SANFILIPPO had instructed her to do, M.S. invested an additional $100,000 with Cayman Shipping by writing four (4) checks, all made payable to "Joseph A. Sanfilippo." M.S. wrote "loan" on the memo line of each of these checks.

15. In order to make M.S. believe that her investment in non-existent Cayman

Shipping was legitimate, defendant SANFILIPPO gave M.S. what purported to be "Investment Promissory Notes." These false and fraudulent "Investment Promissory Notes" purported to be on Cayman Shipping letterhead, were purportedly signed by "Rosenthal" as President of Cayman Shipping and Distribution, LLC, with "Rosenthal" as the "Maker/Promisor/Obligor" and M.S. and defendant SANFILIPPO as the "Holders/Promisees/Obligees".

16. In September 2016, when M.S.'s $200,000 investment matured, and at which time Cayman Shipping owed M.S. her principal and interest, defendant SANFILIPPO tried to persuade M.S. to continue her investment. Defendant SANFILIPPO told M.S. that if she rolled over her investment, she would continue accruing interest.

17. M.S. declined defendant SANFILIPPO's offer and advised him that she wanted her investment money and interest returned to her.

18. Defendant SANFILIPPO stated that it would take some time to get the investment money back, and suggested that they take a trip while waiting for the return of her investment.

19. In September and October of 2016, defendant SANFILIPPO and M.S. took a vacation to Europe. Upon their return to the United States, defendant SANFILIPPO claimed he had to travel to New York for business.

20. Neither defendant SANFILIPPO nor Cayman Shipping returned M.S.'s investment money to her.

21. The checks that M.S. provided defendant SANFILIPPO for the purported investment with "Jacob Rosenthal" and Cayman Shipping were never sent to "Rosenthal" or Cayman Shipping. Instead, the checks were deposited into defendant SANFILIPPO's JPMorgan Chase Bank, N.A. account (ending in 3807), and Wells Fargo Bank, N.A. account (ending in 7787). Shortly after those deposits were made into defendant SANFILIPPO's accounts, defendant SANFILIPPO withdrew the cash and utilized the money for his personal use.

## USE OF THE WIRES

22. On or about the dates indicated below in Broward and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, the defendant,

**JOSEPH A. SANFILIPPO,**

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property, did knowingly transmit and cause to be transmitted in interstate commerce, certain writings, signs, signals, pictures and sounds by means of wire communication, as more particularly described below:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 1 | 10/28/15 | Electronic transmission of routing information for M.S.'s check no. 1734 made payable to Joseph A. Sanfilippo in the amount of $25,000, sent by JPMorgan Chase in Florida to the Federal Reserve Bank located in Georgia. |
| 2 | 10/29/15 | Electronic transmission of routing information for M.S.'s check no. 1735 made payable to Joseph A. Sanfilippo in the amount of $25,000, sent by JPMorgan Chase in Florida to the Federal Reserve Bank located in Georgia. |
| 3 | 10/30/15 | Electronic transmission of routing information for M.S.'s check no. 1736 made payable to Joseph A. Sanfilippo in the amount of $25,000, sent by JPMorgan Chase in Florida to the Federal Reserve Bank located in Georgia. |
| 4 | 11/2/15 | Electronic transmission of routing information for M.S.'s check no. 1737 made payable to Joseph A. Sanfilippo in the amount of $25,000, sent by JPMorgan Chase in Florida to the Federal Reserve Bank located in Georgia. |

In violation of Title 18, United States Code, Section 1343.

## **COUNTS 5-8**
(Structuring - 31 U.S.C. § 5324)

23. Paragraphs 1 through 3 of the General Allegations section of this Information are incorporated by reference as though re-alleged in their entirety herein.

24. Wells Fargo Bank, N.A. ("Wells Fargo"), Charles Schwab Bank ("Charles Schwab"), and JPMorgan Chase Bank, N.A. ("JPMorgan Chase") were financial institutions with accounts insured by the Federal Deposit Insurance Corporation.

25. Title 31, United States Code, Section 5313 and regulations implemented pursuant to that section required financial institutions that engaged in a currency transaction (i.e., a deposit or withdrawal) in excess of $10,000 with a customer to report the transaction to the Internal Revenue Service ("IRS") on form 4789, Currency Transaction Report ("CTR"). CTRs were required to contain information regarding the identification of the individual depositing or withdrawing more than $10,000 in cash into or from a financial institution. These regulations also required that multiple transactions be treated as a single transaction if the financial institution had knowledge that they were by, or on behalf of, the same person, and they resulted in either currency received or disbursed by the financial institution totaling more than $10,000 during any one business day.

26. Law enforcement and the Treasury Department make use of information required to be reported on CTRs. Individuals aware of the CTR reporting requirements who do not want the IRS or other law enforcement authorities to learn of their financial transactions sometimes take active steps to cause financial institutions to fail to file CTRs. Structuring cash deposits and withdrawals to avoid triggering the filing of a CTR by a financial institution is prohibited by Title 31, United States Code, Section 5324(a).

6

27. On or about the dates set forth below in Broward and Miami-Dade Counties, in the Southern District of Florida, the defendant,

**JOSEPH A. SANFILIPPO**,

did knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and the regulations promulgated thereunder, cause and attempt to cause, JPMorgan Chase, a domestic financial institution, to fail to file a report required under Title 31, United States Code, Section 5313(a) and any regulation prescribed under any such section, that is, a CTR, by making cash withdrawals from account number ending in 3807 at JPMorgan Chase Bank, as set forth below:

| Count | Approximate Date | Monetary Transaction |
|---|---|---|
| 5 | 10/29/15 | Cash withdrawal of $9,900 from bank. Cash withdrawal of $3,000 from ATM. |
| 6 | 10/30/15 | Cash withdrawal of $9,900 from bank. Cash withdrawal of $3,000 from ATM. |
| 7 | 11/02/15 | Cash withdrawal of $3,000 from ATM. Cash withdrawal of $9,900 from bank. Cash withdrawal of $3,000 from ATM. Cash withdrawal of $9,900 from bank. |
| 8 | 11/04/15 | Cash withdrawal of $9,900 from bank. Cash withdrawal of $3,000 from ATM. |

All in violation of Title 31, United States Code, Section 5324(a)(1) and 5324(d), and Title 31, Code of Federal Regulations, Section 1010.100, 1010.311 and 1010.314.

Pursuant to Title 31, United States Code, Section 5324(d)(2), it is further alleged that the defendant committed the offense conduct while violating another law of the United States, that is, wire fraud, in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which the defendant, **JOSEPH A. SANFILIPPO**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in Counts 1 through 4 this Information, the defendant, **JOSEPH A. SANFILIPPO,** shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c),

3. Upon conviction of a violation of Title 31, United States Code, Section 5324(a)(1), as alleged in Counts 5-8 of this Information, the defendant, **JOSEPH A. SANFILIPPO**, shall forfeit to the United States of America all property, real or personal, involved in the offense and any property traceable to such property, pursuant to Title 31, United States Code, Section 5317(c)(1)(A).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

_____
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

_____
LAURENCE M. BARDFELD
ASSISTANT U.S. ATTORNEY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: JOSEPH A. SANFILIPPO          **Case No**: _____

Counts: 1-4

Wire Fraud

18 U.S.C. § 1344

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $1,000,000 fine.

Counts: 5-8

Structuring

31 U.S.C. § 5324(a)(1) and (d)(2)

**\*Max. Penalty:** Ten (10) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count:

**\*Max. Penalty:**

Count:

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

Joseph A. Sanfilippo

_____Defendant_____/

CASE NO._____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)
__ Miami   __ Key West
✓ FTL     __ WPB   __ FTP

New defendant(s)            Yes ____   No ____
Number of new defendants    ____
Total number of counts      ____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)   No
   List language and/or dialect   _____

4. This case will take __5__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                          (Check only one)
   I    0 to 5 days        ✓               Petty     ____
   II   6 to 10 days       ____            Minor     ____
   III  11 to 20 days      ____            Misdem.   ____
   IV   21 to 60 days      ____            Felony    ✓
   V    61 days and over   ____

6. Has this case previously been filed in this District Court?   (Yes or No)   No
   If yes: Judge _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No
   If yes: Magistrate Case No.   _____
   Related miscellaneous numbers:   _____
   Defendant(s) in federal custody as of   _____
   Defendant(s) in state custody as of   _____
   Rule 20 from the District of   _____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?   Yes ____   No ✓

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   Yes ____   No ✓

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?   Yes ✓   No ____

_____
Laurence M. Bardfeld
ASSISTANT UNITED STATES ATTORNEY

*Penalty Sheet(s) attached

REV 6/5/2020